1  LUCAS VALLEY LAW
   MARK K. de LANGIS (SBN 190083)
2  2110 Elderberry Lane
   San Rafael, California 94903
3  Telephone: (415) 472-3892
   Facsimile: (415) 472-3977
4  mdelangis@lucasvalleylaw.com

5  Attorneys for Petitioners
   AMERICAN PRESIDENT LINES, LTD. and
6  APL CO. Pte., LTD.

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11

12

13 | In the Matter of the Arbitration between | No. C 07-04495 SI
14 |
15 | AMERICAN PRESIDENT LINES, LTD., a corporation, and APL CO. Pte., LTD., a corporation, | PETITION FOR ORDER CONFIRMING AWARD OF ARBITRATOR
16 |
17 | Petitioners, | [9 U.S.C. section 9]
18 | v.
19 | UNICOM TRANS, INC, a corporation,
20 | Respondent.
21 |

22

23

24 / / /

25

26

1    Petitioners AMERICAN PRESIDENT LINES, LTD. and APL CO. Pte., LTD.
2    (collectively "APL") respectfully allege:
3        1.    Petitioner American President Lines, Ltd. now is, and at all times herein
4    mentioned was, a corporation duly organized and existing under the laws of the State of
5    Delaware, with its principal place of business in the City of Oakland, California.
6        2.    Petitioner APL Co. Pte., Ltd. now is, and at all times herein mentioned was, a
7    corporation duly organized and existing under the laws of Singapore, registered to do business in
8    the State of California.
9        3.    On information and belief, respondent Unicom Trans, Inc. ("Unicom"), was at all
10   material times mentioned herein, a corporation duly organized and existing under the laws of the
11   State of California.
12
13                               **JURISDICTION**
14       4.    The jurisdiction of this Court is invoked under Title 9, United States Code, and
15   particularly Section 9 thereof, and under Title 28, United States Code, section 1333, as a case
16   within the admiralty and maritime jurisdiction of this Court.
17
18                               **BACKGROUND**
19       5.    On or about November 2003, petitioners and respondent entered into a written
20   maritime contract for the shipment of respondent's cargo by sea from the United States to
21   Russia.  (A true and correct copy of the applicable Service Contract No. TA03/0262 is attached
22   hereto, marked Exhibit "A," and is made a part hereof.)
23       6.    This contract evidences a series of transactions involving international maritime
24   commerce, as is shown by its express terms.
25   / / /
26   / / /

7. APL on the one hand, and Unicom on the other, agreed in the contract, at section 4, to resolve any dispute arising under the contract by submitting the dispute to arbitration in San Francisco, California, before an arbitrator of the American Arbitration Association. In addition, APL and Unicom agreed that the decision of the arbitrator "shall be final, binding and not subject to further review." (Service Contract, at Ex. A, § 4(a), attached hereto.)

8. The contract, at Section 4, further provides that the decision of the arbitrator may be enforced by any court, tribunal, or other forum as may properly assert jurisdiction, and that the parties expressly consent and agree that the United States District Court for the Northern District of California shall have personal jurisdiction over the parties to the contract. (Service Contract, at Ex. A, § 4(b), attached hereto.)

9. On July 21, 2004, APL invoiced Unicom the sum of $16,100, which was then, and still is, due pursuant to the terms of Service Contract Number TA03/0262. (A true and correct copy of the July 21, 2004 invoice is attached hereto as Exhibit "B," and made a part hereof.)

## THE ARBITRATION

10. Pursuant to the arbitration agreement, as detailed in section 4 of the above-described contract, APL initiated arbitration proceedings with the American Arbitration Association ("AAA") on February 9, 2007.

11. Following due notice to both APL and Unicom, including preliminary hearings by telephone, an arbitration (via documents per the AAA rules and by order of the arbitrator) was duly conducted in May 2007, before the AAA appointed arbitrator, Matthew J. Geyer, Esq.

12. On June 8, 2007, the arbitrator awarded petitioners American President Lines, Ltd. and APL Co. Pte., Ltd. the principal amount of $16,100, attorneys' fees of $1,800 and costs of $1,928.90, for a total award of $19,828.90. (A true and correct copy of the arbitrator's "AWARD," dated June 8, 2007, is attached hereto as Exhibit "C," and made a part hereof.)

1  13. Unicom has failed to satisfy the arbitration award in the time since it was made.
2  Therefore, a judgment on the arbitration award is needed to permit APL to enforce it.
3  14. This petition is authorized by the terms of the arbitration clause within the
4  maritime contract, Section 9 of the Federal Arbitration Act, and the award itself.

WHEREFORE petitioners AMERICAN PRESIDENT LINES, LTD. and APL CO. Pte., LTD. pray as follows:

1. That an order of this Court be made confirming the Award of Arbitrator for the amount of $19,828.90;
2. That judgment be entered in conformity therewith, for the amount owing of $19,828.90, pursuant to the Award of Arbitrator;
3. That APL be allowed costs incurred herein;
4. The Court award APL prejudgment and post-judgment interest on all sums as provided by law; and
5. That APL be awarded such other and further relief as may be proper.

DATED: August 29, 2007

By: /s/_____
Mark K. de Langis
Attorney for Petitioner
AMERICAN PRESIDENT LINES, LTD and
APL CO. Pte., LTD.

# EXHIBIT A

Amendment No. 1 Effective Dec 16, 2003

SERVICE CONTRACT NO. TA03/0262

ESSENTIAL TERMS PUBLICATION:  
ESSENTIAL TERMS NO

SERVICE CONTRACT TARIFF FMC NO. 20  
ET. NO. TA03/0262  
TARIFFS OF GENERAL APPLICABILITY:  
APL FMC NO. AP1

This Service Contract ("Contract") is made and concluded by and between APL, ("Carrier") and Merchant and each of its affiliates identified herein (each and collectively referred to herein as "Merchant"), whereby the parties mutually agree as set forth in pages attached hereto.

In the event this Contract is signed on behalf of the Merchant by an agent, the undersigned agent warrants that 1) it is authorized and empowered by the Merchant to negotiate and enter into this Contract on behalf of the Merchant, 2) it is authorized and empowered to represent and act on behalf of the Merchant in respect to all activities undertaken within the scope of this Contract or related thereto, including the booking, carriage and handling of cargo and payment of freight and other charges, and 3) all representations made in this Contract regarding the Merchant's status as a shipper are true and correct.

Carrier  
(Signature) Date: 12/16/03  
Name: Steve Licursi  
Title: Manager, Trans-Atlantic Pricing

APL Co. Pte Ltd. In its Individual Capacity and  
as Agent for American President Lines Ltd.  
1111 Broadway  
Oakland, CA, 94607

Merchant  
(Signature) Date: 12/12/03  
Name: Susie Kim  
Title: President

Unicorn Trans Inc.  
15500 S. Western Ave.

Gardena, CA, 90249  
Tel No: 310-323-5535

Fax No: 310-353-5520  
Email Address:  
Customer Number:

Affiliates of Merchant covered by this contract:  
None

Shipper Certification

Pursuant to FMC regulation 46 C.F.R. 530.6, Merchant, by execution of this Contract, certifies its status and that of all its affiliates authorized to utilize this contract as:

(1) _____ THE OWNER OF THE CARGO  
(2) _____ MEMBER OF A SHIPPERS' ASSOCIATION  
(3) __X__ NON-VESSEL-OPERATING COMMON CARRIER  
(4) _____ OTHER (Specify: _____)

If status is #2 above, Merchant certifies that any named members in this contract who are NVOCCs are so identified and that they have tariff(s) and bond(s) on file with the FMC as required by law and regulation.

If status is #3 above, Merchant certifies that any such NVOCC's have tariff(s) and bond(s) on file with the FMC in full compliance with FMC regulations and that copies of tariff pages reflecting same have been provided to Carrier.

Applicable Boilerplate: 101NVO1

Amendment No. 1 Effective Dec 18, 2003

## SERVICE CONTRACT NO. TA03/0262

ESSENTIAL TERMS PUBLICATION:      SERVICE CONTRACT TARIFF FMC NO.20
ESSENTIAL TERMS NO.               ET. NO. TA03/0262
                                  TARIFFS OF GENERAL APPLICABILITY:
                                    APL FMC NO. AP1

This Service Contract ("Contract") is made and concluded by and between APL, ("Carrier") and Merchant and each of its affiliates identified herein (each and collectively referred to herein as "Merchant"), whereby the parties mutually agree as set forth in pages attached hereto.

In the event this Contract is signed on behalf of the Merchant by an agent, the undersigned agent warrants that 1) it is authorized and empowered by the Merchant to negotiate and enter into this Contract on behalf of the Merchant, 2) it is authorized and empowered to represent and act on behalf of the Merchant in respect to all activities undertaken within the scope of this Contract or related thereto, including the booking, carriage and handling of cargo and payment of freight and other charges, and 3) all representations made in this Contract regarding the Merchant's status as a shipper are true and correct.

|                     Carrier                      |                    Merchant                     |
|---|---|
| (Signature)   Date: 12/18/03                     | (Signature)   Date: 12/17/03                    |
| Name: Steve Licursi                              | Name: Susie Kim                                 |
| Title: Manager, Trans-Atlantic Pricing           | Title: President                                |

APL Co. Pte Ltd. In its Individual Capacity and
as Agent for American President Lines Ltd.
1111 Broadway
Oakland, CA, 94607

Unicom Trans Inc.
15500 S. Western Ave.

Gardena, CA, 90249
Tel No: 310-323-5535
Fax No: 310-323-5520 *(handwritten correction: 323)*
Email Address:
Customer Number:

Affiliates of Merchant covered by this contract:
None

### Shipper Certification

Pursuant to FMC regulation 46 C.F.R. 530.6, Merchant, by execution of this Contract, certifies its status and that of all its affiliates authorized to utilize this contract as:

(1) _____ THE OWNER OF THE CARGO
(2) _____ MEMBER OF A SHIPPERS' ASSOCIATION
(3) __X__ NON-VESSEL-OPERATING COMMON CARRIER
(4) _____ OTHER (Specify:_____)

If status is #2 above, Merchant certifies that any named members in this contract who are NVOCCs are so identified and that they have tariff(s) and bond(s) on file with the FMC as required by law and regulation.

If status is #3 above, Merchant certifies that any such NVOCC's have tariff(s) and bond(s) on file with the FMC in full compliance with FMC regulations and that copies of tariff pages reflecting same have been provided to Carrier.

Applicable Boilerplate: 101NVO1

APL Service Contract TA03/0262
Amendment No, 1 Effective Dec 18, 2003

# SERVICE CONTRACT - SC NO. TA03/0262

**Table Of Contents**

Appendix A - TransPacific Eastbound (reserved)
Appendix B - TransPacific Westbound (reserved)
Appendix C - TransAtlantic Eastbound .................................................................................................7
Appendix D - TransAtlantic Westbound (reserved)
Appendix E - Latin America Northbound (reserved)
Appendix F - Latin America Southbound (reserved)
Appendix G - Asia/Europe (reserved)
Appendix H - Europe/Asia (reserved)
Appendix I - Intra Asia (reserved)
Appendix J - Latin America - Eastbound, Westbound, Intra Latin (reserved)
Appendix K - Intra Europe (reserved)
Appendix Affiliates (reserved)

ersion April 14, 2003 101NVO1

# SERVICE CONTRACT

1. APPLICATION OF CONTRACT

(a) This contract applies with respect to the transportation of Merchant's commodities listed in the appendix attached hereto (the "Appendix") between the origin and destination locations listed in the Appendix. This contract, its appendices and exhibits thereto, together with the terms and conditions of Carrier's bill(s) of lading and tariffs (to the extent applicable after giving effect to this Contract and exhibits referenced herein) embodies the entire understanding between the parties. There are no other agreements, understandings, conditions, warranties or representations, oral or written, express or implied, with reference to the subject matter of this Contract, which are integrated herein. No modification hereof shall be of any force or effect unless reduced to writing making reference to this Contract and executed by the parties and duly filed with the U.S. Federal Maritime Commission. In the event of any conflict among the terms and conditions of this Contract, the bill(s) of lading and the Carrier's applicable tariff(s), the order of governance shall be, first, the bill(s) of lading, second, this service contract, and third, the tariff(s).

(b) For purposes of determining whether a shipment is made during the term of this contract, the date when the shipment is received by the Carrier or its agent shall govern. A shipment shall not be considered as "received" until the full bill of lading quantity has been received.

(c) Merchant represents it is authorized and empowered to enter into this service contract by and on behalf of each and every affiliate identified on the attached schedule, if any, and to represent such affiliates in all matters relating to carriage of cargo tendered hereunder.

(d) For all cargo movements hereunder from or to the People's Republic of China, Japan, Taiwan and Mexico, the term "Carrier" shall refer to American President Lines, Ltd., a Delaware USA corporation. For cargo movements from or to all other locations, the term "Carrier" shall refer to APL Co. Pte Ltd, a Singapore corporation. APL Co. Pte Ltd hereby assumes the obligations, if any, of American President Lines, Ltd. under paragraph 6 below, including the obligation to pay liquidated damages under subparagraph 6(b).

2. EFFECTIVE DATE AND TERM

(a) This service contract shall become effective as of the date specified on page 1 hereof, or that date on which it is fully executed and filed with the US Federal Maritime Commission, whichever is later. It shall continue in effect until the expiration date, or lapse of the period, specified in the Appendix.

(b) Carrier may, at any time after Merchant has met the Minimum Volume Commitment ("MVC") set forth in Appendix to the Contract, terminate this Contract, on thirty (30) calendar days written notice to Merchant.

3. MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING

(a) Merchant shall tender not less than the MVC during the term hereof. Shipments shall be deemed within the scope of this contract and shall be counted toward the MVC if made by Merchant's parent, subsidiary, or other affiliated companies or entities under common control, or by an authorized agent in behalf of any such entity, all of which entities must be identified on signature page or Appendix. Merchant shall remain responsible to carrier for all obligations of non merchant parties shipping cargo under this Contract.

(b) If Merchant fails to tender shipments in sufficient quantity to meet Merchant's undertaking as set forth in the foregoing paragraph (a), Merchant shall, within 30 calendar days of receipt of Carrier's invoice therefore, pay deadfreight in the amount of $350 for each FEU by which the Minimum Volume Commitment exceeds the volume actually tendered.

(c) No volume shipped under this contract shall apply toward any time/revenue or time/volume requirement of any freight tariff or other service contract published by or on behalf of Carrier.

(d) Merchant shall book its space requirements for shipments tendered under this contract not less than 7 calendar days prior to the scheduled arrival of the Carrier's vessel at port of loading. If the shipments are offered upon less than 7 calendar days' notice, Carrier may accept such shipments, which shall then count toward the MVC or decline the shipments, at its option.

4. DISPUTES

(a) Any and all disputes arising out of or in connection with this Contract, including any failure by the Merchant to pay or by the Carrier to perform as required hereunder, shall be resolved by arbitration in San Francisco, California, or such other place as the parties to the dispute may mutually agree under the rules of the American Arbitration Association. The arbitration shall be before a single arbitrator to be appointed by the parties to the dispute or, failing such agreement and upon the application of any party to the dispute, by the American Arbitration Association. There shall be no restrictions on the nationality of the arbitrator. Except by agreement of the parties to the dispute, there shall be no prehearing discovery. The costs and expenses of the arbitration (including reasonable attorney's fees and costs) shall be borne by the non-prevailing party. The decision of the arbitrator shall be final, binding and not subject to further review.

(b) The decision of the arbitrator may be enforced by any court, tribunal or other forum as may properly assert jurisdiction. The parties hereto expressly consent and agree that the United States District Court for the Northern District of California has personal jurisdiction.

5. RATES and CHARGES

(a) Carrier shall assess the freight rates and charges set forth or referenced in the Appendix to all of the Merchant's shipments tendered under this contract.

(b) Except to the extent that the freight rates set forth in the Appendix expressly include or are not subject to other charges, all of the items contained in the Tariff(s) listed in the Appendix shall apply to and govern shipments tendered under this contract, including but not limited to: bunker fuel, currency exchange and other surcharges, and all arbitraries, storage, containerized cargo demurrage, equipment detention, and all other charges, together with all additions, deletions or modifications thereof, all Tariff rules and provisions, and all supplements thereto and reissues thereof.

(c) If at any time during the term of this service contract an increase in the applicable charges or surcharges provided in the Tariff occurs, which would otherwise apply to Merchant's shipments in the absence of this service contract, the charges or surcharges specified or incorporated by reference in the Appendix shall be increased as of the same date it becomes effective in the Tariff.

(d) If at anytime during the term of this service contract a General Rate Increase (GRI) or an increase in a specific commodity rate occurs in the Tariff, which would otherwise apply to Merchant's shipments in the absence of a service contract, then the GRI or commodity rate increase shall be added to and included in the rates and charges set forth or incorporated by reference in the Appendix, as of the same date it becomes effective in the Tariff.

6. SERVICE; CARRIER LIABILITY

(a) In consideration for Merchant's MVC, Carrier shall provide container equipment for booked shipments and shall accept each shipment timely offered by Merchant in order to meet Merchant's MVC; provided that carrier shall have no obligation with respect to cargo tendered in excess of an amount equal to 10% of the annualized MVC during any of the sequential 30 day periods covered by this Contract, the first of which commences with the effective date of the Contract. For purposes of this contract, "timely offered" shall mean shipments booked pursuant to the minimum notice provision of clause 3 (d).

(b) In the event that Carrier fails to provide container equipment, or fails to accept each shipment timely offered, within Merchant's MVC, the MVC shall be reduced by the volume tendered, except as provided in paragraph (a) above, but not carried or container equipment not supplied in order to meet

Merchants MVC. Further, if Carrier fails to perform its service obligations set forth in paragraph (a) above, the parties acknowledge that Merchant may suffer commercial damages which are difficult to predict. Accordingly, the Carrier shall pay liquidated damages in the amount of US$350 per FEU by which Carrier's service failure results in carriage of less than the MVC; provided however, the MVC for the Carrier shall not be reduced by any FEU by which the Merchant's obligation to tender the MVC was reduced due to Carrier service failures.

(c) Carrier undertakes to provide the services and remedies identified in paragraph (a) and (b) above. Carrier does not undertake to perform Merchant's requirements for ocean transportation or to supply container equipment other than on a mutually agreed, space-available basis after Carrier's receipt and transportation of Merchant's MVC or during a period when no MVC is expressly provided.

(d) Except as expressly set forth in this paragraph 6, shipments under this contract shall be subject to all of the terms and conditions of Carrier's bill of lading in effect at the time of shipment and Carrier's liability for cargo loss, damage, delay, misdelivery or other breach of the contract of carriage, if any, shall be determined exclusively under the terms and conditions of the bill of lading.

7. FORCE MAJEURE

If Merchant is prevented from tendering the MVC or if Carrier is prevented from performing its service undertaking as set forth in paragraph 6 above as the result of a condition or cause beyond its control, including but not limited to, labor disputes, embargoes, casualties (whether or not the negligent acts or omissions or fault of a party contributed thereto), acts of God, civil disturbances, act or default of the other party and restraint of laws or governments, but excluding loss of market or other commercial contingencies, such failure to perform by suppliers or contractors shall be excused to that extent but no further. The party claiming excused performance shall promptly, but in any event within 7 working days, notify the other at the time of commencement and termination of an event excusing its performance, together with a statement estimating the effect of such event on its ability to perform. If an event wholly or partially preventing the performance of a party shall continue for more than 30 calendar days, either party may terminate this Contract upon delivery of written notice of termination.

8. COMPENSATION and PAYMENT of FREIGHT and CHARGES

Carrier's freight charges computed in accordance with the Appendix, demurrage, detention, surcharges, arbitraries, and all other charges applicable under the Tariff and this contract shall be paid in strict accordance with the Tariff and bill of lading before the release of the shipments on which charges accrued, or, in the case of prepaid shipments under negotiable bills of lading, before release of the original bills of lading.

9. SHIPMENT RECORDS

The shipment records required to be maintained under 46 CFR Section 530.15 shall consist of copies of Merchant's bills of lading, or computer generated bills of lading, any force majeure correspondence and notices, and any correspondence concerning Merchant's or Carrier's failure to perform which affects Merchant's entitlement to the contract rates, all of which shall be maintained by Carrier at its offices. Upon request from Carrier, Merchant shall promptly submit to the Carrier information and documents sufficient to verify the quantity and nature of cargo shipped under this contract. Shipping documents provided by Merchant governing individual shipments under this contract and all copies thereof shall bear a notation showing the service contract number of this contract. The designation by Merchant of cargo as contract cargo by affixing the contract number on the shipping documents provided by Merchant shall be made at the time of the issuance of the bill of lading and shall be conclusive.

The Merchant, and the Carrier, shall cooperate in maintaining shipment records documents and reports as they may from time to time mutually determine to be administratively desirable. The person who will respond to requests on behalf of the Carrier to make shipping records available to FMC is the Carrier's Tariff Publishing Officer, 1111 Broadway, Oakland, CA 94607, Telephone No. (510) 272-8033.

10.    MANIFESTING NVOCCS

The provisions of this paragraph 10 shall apply whenever (1) the Merchant is an non-vessel operating common carrier within the meaning of 19 C.F.R. § 4.7, *et seq.*; (2) Merchant has elected to electronically manifest its USA-related cargo directly with US Customs by way of the Vessel Automated Manifest System ("AMS"); and (3) Merchant has notified Carrier of Merchant's intention to manifest its cargo in this fashion.

(a) Merchant warrants and represents that it has elected to electronically submit manifest information directly to US Customs via AMS, and that it is qualified to submit manifest information via AMS under applicable US Customs regulations.

(b) Merchant further warrants and represents that it shall comply with all applicable US Customs and other regulations and applicable law in respect to submitting manifests, including but not limited to the obligation to file accurate and complete information in a timely manner.

(c) Merchant further undertakes, warrants and agrees that it shall comply with Carrier's policies and procedures in respect to booking, communications, equipment management and EDI, as more specifically spelled out in the APL/NVOCC Coordination Guidelines, which are incorporated herein by this reference.

(d) Merchant further undertakes, warrants and represents that it shall immediately communicate to Carrier's designated representative hold orders it receives from US Customs in respect to Merchant's Shipments. Merchant and Carrier shall diligently cooperate with each other in complying with hold orders pertaining to Merchant's Shipments, providing necessary information to each other and US Customs, and otherwise assuring prompt and full compliance with related instructions received from US Customs.

(e) Merchant agrees it shall indemnify, defend and hold Carrier harmless for and against any and all fines, penalties, liabilities, claims, costs, damages, attorneys fees or demands of any kind whatsoever without limitation (collectively "Damages," as further defined below), that may arise as a result of or are materially related to: (i) its failure to meet its obligations and undertakings under this Agreement, (ii) any act, error or omission in respect to manifesting Cargo via the AMS system by Merchant, (iii) cargo manifested in the AMS system by Merchant, and/or (iv) its improper notification or failure to notify Carrier of a hold or other US Customs' order (hereafter separately and collectively "Indemnity Event(s)"). This obligation shall apply strictly and without regard to whether Merchant acted or failed to act intentionally, negligently or otherwise. Merchant shall pay to Carrier any and all Damages that Carrier has or will suffer, pay or be obligated to pay by reason of any such Indemnity Event. The foregoing duty to indemnify Carrier shall not apply to Damages caused by the negligence of the Carrier. "Damages" include but are not limited to all costs associated with complying with government orders as further identified in Rules 49 and 53 of the APL AP1 General Rules Tariff. Nothing in this paragraph 10 shall reduce, alter or prejudice the respective indemnity obligations of the Parties, if any, that may arise elsewhere in this Contract, under any bills of lading issued hereunder, or under any applicable Carrier tariff(s).

(f) Carrier agrees it shall indemnify, defend and hold Merchant harmless for and against any and all fines or penalties imposed on Merchant by US Customs as a result of Carrier's negligent act or omission. In the event of comparative fault of the Merchant, liability under this subparagraph (f) shall be allocated in proportion to the respective fault of the parties.

APL Service Contract TA03/0262
Amendment No, 1 Effective Dec 18, 2003

APPENDIX C

SERVICE CONTRACT No: TA03/0262

1. **ORIGIN:**
   UNITED STATES

2. **DESTINATION:**
   RUSSIA

3. **COMMODITIES:**
   a. Computer Monitors, NOS

4. **MINIMUM VOLUME COMMITMENT:**
   50 FEU

5. **SERVICE COMMITMENTS:**
   The service commitment applicable hereto is that set forth in Paragraph 6 of this contract.

6. **CONTRACT RATES:**
Rates in USD unless otherwise noted. Rates subject to applicable arbitraries, outports and inland charges as specified in applicable tariff unless otherwise noted in paragraph 6 and 10 of this appendix.

**Computer Monitors, NOS**
**San Pedro, CA (CY)**
**Load Port - Houston, TX**

| Destination | Dlv Md | D40 | D40H |
|---|---|---|---|
| St. Petersburgh, Russia | CY | 2200 | 2200 |

7. **LIQUIDATED DAMAGES:**
   The liquidated damages for non-performance hereunder are set forth in Paragraphs 3 (b) and 6 (b) of this contract.

8. **EXPIRATION DATE OR PERIOD OF TERM:**

   Am1   Commencement:      Nov 3, 2003
         Effective through: Jan 31, 2004

9. **SIGNATURE**
   See Signature Page

10. **ASSESSORIALS**
a) The contract rates set out in paragraph 6 are inclusive of the following extra charges where applicable:
   None

b) The contract rates set out in paragraph 6 are not subject to the following extra charges where applicable:
   1. Destination Delivery Charge(DDC)
   2. Terminal Handling Origin(THC)
   3. Currency Adjustment Factor(CAF)
   4. Chassis Charge(CHS)

7 of 8

5. **Fuel Adjustment Factor(FAF)**

c) The following extra charges shall apply during the term of this contract:

All other charges not listed above shall apply pursuant to Paragraph 5 (b) of this contract.

**101 BOILER PLATE**
    101NVO1 applies